IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VERNON MAULSBY, *Plaintiff,* v. PHILLIP EPHRAIN, et al. *Defendant.* | CIVIL ACTION NO. 22-4840 |

**Pappert, J.**                                                             **March 22, 2024**

## MEMORANDUM

    *Pro se* plaintiff SCI-Phoenix inmate Vernon Maulsby sued the prison's librarian, Dr. Phillip Ephraim,[1] alleging state-law negligence and Eighth Amendment deliberate indifference claims arising from an incident where Ephraim purportedly failed to call the medical department after Maulsby, a library clerk working under Ephraim's supervision, complained of severe chest pains and difficulty breathing. Ephraim moves for summary judgment, contending that he did not breach any duty owed to Maulsby, and in any event, that sovereign immunity bars Maulsby's negligence claim. Ephraim further argues that he is entitled to qualified immunity on the Eighth Amendment claim.

    The Court grants Ephraim's motion in part and denies it in part. Sovereign immunity bars the negligence claim because it does not fit within the nine exceptions to immunity, and no reasonable juror could conclude Ephraim was acting outside the scope of his employment during the incident. However, Ephraim is not entitled to

---

[1]     Ephraim's name is misspelled "Ephrain" in the case caption. He is not a medical doctor.

1

qualified immunity on the Eighth Amendment claim insofar as reasonable jurors could find that Ephraim was deliberately indifferent to Maulsby's serious medical needs when he allegedly ignored Maulsby's requests for help, and the unlawfulness of that conduct was clearly established at the time of the alleged events.

I

Maulsby has been incarcerated since the early 1980s. (Maulsby Dep. 10:13–11:5, ECF No. 63-3). Since 2015, he has worked as a clerk in the prison leisure library under Ephraim's supervision. (*Id.* at 14:21–15:20, 21:12–15); (Def's Resp. To First Set of Interrogatories, ECF No. 63-4, at 2).[2] For the past few years, he has used a wheelchair due to poor circulation, and he has previously been treated for a possible heart attack, asthma and pneumonia. (Maulsby Dep. 26:1–20, 29:9–18).

On January 5, 2022, at approximately 10:15 a.m., Maulsby was working at the library when he started having chest pain and difficulty breathing. (*Id.* at 38:7–39:22). He says he felt like he was "kicked in the chest with a baseball bat," and his co-worker, Preston Carrol, "saw the shape [Maulsby] was in and told Dr. Ephraim." (*Id.* at 39:9–13). Maulsby alleges that Ephraim told Carrol he would come out of his office and check on him "as soon as he completed what he was doing." (Resp. To Mot. For Summ. J., ECF No. 70-1, at 1). Ephraim did not do so and after roughly fifteen minutes, Carrol again told Ephraim about Maulsby's condition. (Maulsby Dep. 39:13–22). According to Maulsby, Ephraim reiterated that he would call the medical department "as soon as I get finished what I am doing." (Resp. To Mot For Summ. J., ECF No. 70-1, at 1).

---

2    All page numbers are referring to the ECF page number.

2

Ephraim says Maulsby was sitting a few feet from Ephraim's office window, allowing Ephraim to effectively monitor Maulsby "by a direct line of sight," and that he was "toggling back and forth between the Triage-East phone line and the Trauma-East phone line," but that the medical department's extension was "busy" and he never connected with them. (Def's Answers to Pl.'s First Req. For Admissions, ECF No. 63-8, at 3–5); (Def's Resp. To First Set of Interrogatories, ECF No. 63-4, at 3, 4).

Frustrated by Ephraim's apparent lack of action, Carrol wheeled Maulsby to the guard post and received permission to take Maulsby to the medical department. (Maulsby Decl., ECF No. 70-3, at 2).[3] Ephraim says he allowed this to happen, something Maulsby disputes. *Compare* (Def's Resp. To First Set of Interrogatories, ECF No. 63-4, at 3), *with* (Maulsby Decl., ECF No. 70-3, at 2). Maulsby also disputes Ephraim's assertion that Maulsby was sitting "a few feet from [Ephraim's] office

---

[3] In his response, Maulsby attaches a statement from Preston Carrol. (ECF No. 70-4). While Ephraim never argued this point, Carrol's statement is unsworn, not made under penalty of perjury and should not be considered at summary judgment. *See United States ex rel. Doe v. Heart Solution, PC*, 923 F.3d 308, 315 (3d Cir. 2019). Carrol's letter includes no reference to the penalty of perjury; he instead concludes his letter by saying, "I was a direct witness to the events I describe above, and now sign and have two witnesses sign to confirm my signature, to attest to the truth of the statement I have made above." (Carrol Statement, ECF No. 70-4, at 2). Courts have found similar language missing reference to perjury insufficient to substantially comply with the requirements of 28 U.S.C. § 1746. *See Meronvil v. Doe*, No. 17-8055, 2023 WL 4864383, at *1 n.2 (D.N.J. July 31, 2023) (collecting cases).

Without Carrol's statement, everything Carrol told Maulsby regarding Ephraim's actions (or lack thereof) could be inadmissible hearsay which generally should not be considered at summary judgment; however, if the statement is capable of being admissible at trial, the statement may be considered. *See Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238–39 (3d Cir. 2016). Hearsay evidence produced in opposition to a summary judgment motion may be considered, *inter alia*, "if the out-of-court declarant could later present the evidence through direct testimony . . . ." *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990). Maulsby identified Carrol as a witness and testified during his deposition that he "asked [his] friends that know [Carrol] to try to get a hold of him" because he "we'll need him when this goes to trial." (Maulsby Dep. 23:1–5). Given the possibility at this time that Carrol could testify, the Court takes Carrol's purported statements into account.

3

window" such that Ephraim could easily have monitored him by a direct line of sight. *Compare* (Def's Answers to Pl.'s First Req. For Admissions, ECF No. 63-8, at 3–5), *with* (Weyerman Decl., ECF No. 70-5, at 2). When he finally received medical care, Maulsby was diagnosed with a lung infection and treated with antibiotics. (ECF No. 63-5, at 2); (Maulsby Dep. 54:2–21). Maulsby allegedly still suffers from mental and physical issues caused by this incident, including a worsening of his PTSD. (ECF Nos. 70-23, 70-24 and 70-25); (Maulsby Dep. 87:1–5).

Maulsby sued the Department of Corrections, Ephraim, Secretary of Corrections George Little, SCI-Phoenix Superintendent Jamie Sorber and Wellpath, a prison healthcare provider, in the Montgomery County Court of Common Pleas. The case was removed on December 7, 2022. (ECF No. 1). The Court eventually dismissed all claims except those against Ephraim. *See* (ECF No. 20).

## II

Summary judgment is proper if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A fact is material if it "might affect" the case's outcome "under the governing law," and a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A mere "scintilla" of evidence supporting the nonmovant will not suffice; rather, to avoid summary judgment, he must "set forth specific facts showing that there is a genuine issue for trial" and cannot "rest upon" pleadings. *Id*. at 252, 256. While a court must "liberally construe" a *pro se* plaintiff's complaint and "apply the applicable law" regardless of whether he has "mentioned it by name," such a

plaintiff still faces the "formidable task" of "producing evidence" sufficient to create a genuine dispute for trial. *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (quoting *Anderson*, 477 U.S. at 248).

A court can consider any material in the record that may be admissible at trial, and must "view the facts in the light most favorable to the nonmoving party and draw all inferences" in his favor. *See* Fed. R. Civ. P. 56(c)(2); *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009) (internal quotation marks omitted). But it need not credit "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010); *see also Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009) ("speculation and conjecture" will not defeat a summary judgment motion). Additionally, the court cannot make credibility determinations or weigh the evidence. *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Armour v. City of Beaver*, 271 F.3d 417, 420 (3d Cir. 2001)).

### III

Maulsby claims Ephraim was negligent in failing to follow prison policies and procedures and promptly call the medical department after learning of Maulsby's medical needs.[4] Because this claim is barred by state sovereign immunity, the Court need not address whether Ephraim breached any duty of care.

---

[4] Maulsby testified at his deposition this was a standard negligence claim, not a medical malpractice claim. (Maulsby Dep. 64:6–12).

Sovereign immunity bars claims against the Commonwealth and its employees acting within the scope of their duties. 1 Pa. C.S. § 2310. However, the sovereign immunity defense may not be raised against claims for damages caused by: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. C.S. § 8522(b). These exceptions are strictly construed and none apply here. *See Moser v. Heistand*, 681 A.2d 1322, 1326 (Pa. 1996).

Under Pennsylvania law, an employee acts within the scope of his employment when he "engages in conduct of the kind the employee is employed to perform, when the conduct occurs substantially within the authorized time and space limits, and when the conduct is actuated, at least in part, by a purpose to serve the employer." *Brown v. Lewis*, 865 F. Supp.2d 642, 649 (E.D. Pa. Apr. 27, 2011) (internal quotation marks omitted). The incident Maulsby alleges occurred during one of his library shifts, Carrol told Ephraim of Maulsby's condition in Ephraim's office and Ephraim allegedly failed to call the medical department. (Resp. To Mot. For Summ. J., ECF No. 70-1, at 1). Ephraim was acting within the scope of his duties, and judgment is entered in his favor on the negligence claim. *See Mobley v. Snyder*, No. 13-772, 2015 WL 5123909, at *16 (M.D. Pa. Sept. 1, 2015) (holding state law claims based on prison officials' repeated failure to get plaintiff medical care for cardiac issues barred by sovereign immunity).

IV

A

Qualified immunity shields officials from liability "unless they (1) violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established.'" *District of Columbia v. Wesby*, 566 U.S. 658, 664 (2012) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Ephraim argues that neither exception applies to his conduct. (Mot. For Summ. J., ECF No. 63, at 10–14).

Deliberate indifference to serious medical needs of prisoners "constitutes the unnecessary and wanton infliction of pain" that is proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (internal quotation marks omitted). To succeed on a deliberate indifference claim, a plaintiff must show: (1) a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff. *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023).

1

A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quotation marks omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id.* A serious medical need is life threatening without proper care. *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002).

Maulsby, a wheelchair bound man in his mid-sixties, was in distress, complaining of severe chest pains. It would be obvious to a layperson in Ephraim's position that Maulsby needed medical attention, making the medical need a serious one. *See Mata v. Seitz*, 427 F.3d 745, 754 (10th Cir. 2005) ("[S]evere chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard."). *See also Knepp v. Paraway*, No. 19-153, 2020 WL 7865401, at *7 (W.D. Pa. Nov. 18, 2020), *report and recommendation adopted*, 2020 WL 7864199 (W.D. Pa. Dec. 31, 2020) ("Although physicians . . . ultimately determined that [the plaintiff's] symptoms . . . were attributable to gastritis rather than cardiac related, his complaints of chest pains and other symptoms must be considered to have represented a 'serious' medical need considering his medical history.").

2

Deliberate indifference may be shown by "intentionally denying or delaying medical care." *Estelle*, 429 U.S. at 104–05. "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (internal quotation marks omitted). The Third Circuit has found deliberate indifference in a "variety of circumstances," including "where the prison official . . . delays necessary medical treatment based on a non-medical reason . . . ." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

A reasonable juror could conclude Ephraim delayed "necessary medical treatment based on a non-medical reason." *Id*. After Carrol told him about Maulsby's

chest pains and trouble breathing, Ephraim allegedly said that "as soon as he completed what he was doing, he would come out and see what was going on," but "never got up from his desk." (Maulsby Decl., ECF 70-3, at 2); (Resp. To Mot. For. Summ. J., ECF No. 70-1, at 1). Carrol told him a second time that Maulsby urgently needed medical attention, but "after some minutes had elapsed, with no indication of assistance," Carrol took matters into his own hands and wheeled Maulsby to the medical department himself. (Maulsby Decl., ECF No. 70-3, at 2). Ephraim admitted "this was the first time in 10 years [he] had to rush [a] worker to medical." (Def's Answers To Pl.'s First Req. For Admissions, ECF No. 63-8, at 8). In other words, there is no indication Maulsby ever "cried wolf" and a reasonable factfinder could infer Ephraim knew the incident was serious. *See Burton v. Clinger*, No. 21-1586, 2023 WL 4399221, at \*2 (3d Cir. July 7, 2023).

Ephraim contends that he did not need to leave his office because "[Maulsby] was positioned a few feet from [Ephraim's] office window" and he "effectively monitored [Maulsby] by a direct line of sight," but Maulsby disputes that claim and contends he was never that close to Ephraim's office window. *Compare* (Def's Answers To Pl.'s First Req. For Admissions, ECF No. 63-8, at 3), *with* (Weyerman Decl., ECF No. 70-5, at 2). Moreover, Ephraim says he tried calling the medical department, was "toggling back and forth between the Triage-East phone line and the Trauma-East phone line," and that the medical department's extension was "busy." (Def's Answer to Pl.'s First Req. For Admissions, ECF No. 63-8, at 3–5). But at summary judgment, the Court cannot make credibility determinations. *Parkell*, 833 F.3d at 323. And reasonable jurors could conclude Ephraim knew of and disregarded "an excessive risk to [Maulsby's] health and

9

safety," *Farmer*, 511 U.S. at 837, that resulted in "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104.

Ephraim also argues that later that day Maulsby was treated by the medical department, and since non-medical prison officials are not considered deliberately indifferent simply because they failed to respond to the medical complaints of a prisoner who was already being treated by a prison doctor, he cannot be liable. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); (Mot. For Summ. J., ECF No. 63, at 12). Ephraim's argument does not apply; there is no record evidence Maulsby was being treated by the prison medical department for his chest pain prior to the January 5 episode, something Ephraim acknowledges. (Mot. For Summ. J., ECF No. 63, at 12). This is not a situation where Ephraim knew Maulsby was under the care of medical professionals and thought he was in capable hands. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Rather, Carrol told Ephraim that Maulsby was having severe chest pains and for fifteen minutes Ephraim allegedly did nothing. After Carrol wheeled Maulsby out of the library and to the medical department, Ephraim may have assumed he would be adequately cared for. *See Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 236. But for those fifteen minutes where he allegedly failed to act, a reasonable juror could find Ephraim deliberately indifferent to Maulsby's serious medical needs. (Mot. For Summ. J., ECF No. 63, at 12).

3

Finally, the record contains evidence from which a jury could conclude Ephraim's conduct harmed Maulsby. Maulsby's physical pain, suffering and anxiety was extended by roughly fifteen minutes because of Ephraim's delay, and the Eighth Amendment

forbids "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (finding the pain and suffering imposed by the several hour delay in medical treatment for a heart attack satisfied the deliberate indifference test). Maulsby also contends he began "having issues with [his] PTSD," (ECF No. 70-23, at 2), which "severely impaired the progress brought by therapy."[5] (ECF No. 70-24, at 2). *See Wolfe v. Horn*, 130 F. Supp.2d 648, 658 (E.D. Pa. Jan. 29, 2001).

B

Because a reasonable jury could find Ephraim was deliberately indifferent to Maulsby's serious medical needs, the qualified immunity inquiry hinges on the second prong—whether the right at issue was clearly established.

To determine if the right at issue is clearly established at the time of the alleged misconduct, the right must be defined "at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)

---

[5] In claims for compensatory damages, a prisoner must demonstrate physical injury before he can recover for mental or emotional injuries. *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) (citing 42 U.S.C. § 1997e(e)). The Third Circuit has interpreted § 1997e(e) to require a "less-than-significant-but-more-than-de-minimis physical injury as a predicate to allegations of emotional injury." *Mitchell*, 318 F.3d at 536. Maulsby suffered physical injury, namely, the chest pain and difficulty breathing caused, as it turned out, by a lung infection. *See Sealock*, 218 F.3d at 1210 n.6 (finding the inmate satisfied the statutory requirement because he made a prior showing of a heart attack); *Morris v. Levi*, 2011 WL 1936778, at *8 (E.D. Pa. Apr. 8, 2011), *report and recommendation adopted by* 2011 WL 1938149 (E.D. Pa. May 20, 2011) (noting dizziness, sharp chest pains, increased heart rate and blacking out were physical effects experienced during the delay in treatment for a heart condition).

(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). This standard does not require a case directly on point, but does require that "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 741.

Ephraim contends that that he is "unaware of any authority holding that a non-medical prison employee can be liable under an Eighth Amendment deliberate indifference theory where the inmate in question is in fact taken to, and treated by, the prison's medical department in time to avoid hospitalization, serious injury or death . . . . " (Mot. For Summ. J., ECF No. 63, at 12).

Ephraim defines the right too narrowly. *See Adami v. County of Bucks*, No. 19-2187, 2022 WL 1073072, at *6 (E.D. Pa. Apr. 8, 2022) (rejecting the defendants' "far too narrow[]" proposed definition of the right at stake and adding "[r]equiring the extreme level of specificity sought by the [m]oving [d]efendants would essentially turn qualified immunity into absolute immunity"). "[I]t need not be the case that the exact conduct has previously been held unlawful so long as the contours of the right are sufficiently clear." *Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017). And the contours of this right are clear: it is well settled that a prison official is deliberately indifferent to a prisoner's serious medical need where he "delays necessary medical treatment based on a non-medical reason." *Rouse*, 182 F.3d at 197; *Lanzaro*, 834 F.2d at 346 ("Short of absolute denial, if necessary medical treatment is . . . delayed for non-medical purposes, a case for deliberate indifference has been made out.") (internal quotation marks omitted). As such, Ephraim is not entitled to qualified immunity.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.